STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200

Presented on behalf of Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| N. CHAVEZ,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO VILLANUEVA, UNKNOWN FEMALE DEPUTY GUERRERO, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,<br>Defendants. | **COMPLAINT**<br><br>(Police Thuggery, for Damages for Civil Rights Violations, 42 U.S.C. § 1983, and RICO)<br><br>**JURY DEMAND**<br><br>**CLASS ACTION ALLEGATIONS** |

Plaintiff makes the following allegations, in support of the this complaint:

### JURISDICTION AND VENUE

1. Plaintiff, **N. CHAVEZ**, is an Hispanic person who asserts federal claims, under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) (civil rights), and RICO violations against defendants, and subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of the federal claims. Defendants' wrongful actions affected interstate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and therefore venue lies in the United States District Court for

1

the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is a person who has been subject to Los Angeles Sheriff's Department ("LASD") police thuggery, and defendants are Los Angeles County Sheriff **ALEJANDRO VILLANUEVA, UNKNOWN FEMALE DEPUTY SHERIFF GUERRERO,** and **10 UNKNOWN NAMED DEFENDANTS,** who are LASD deputies, participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants acted under color of law, and all engaged in the same wrongful conduct, by participating in, facilitating, and making the decisions that resulted in the wrongs hereinbelow alleged.

4. Defendants, each and all are sued in both their individual and official capacities, when they have an official capacity, but only in their official capacities, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which defendants are sued in their official capacities only, and in their individual capacities only for the RICO violations hereinbelow alleged.

5. Plaintiff is a person who has been subjected to thuggery and subjected to constitutional violations and RICO violations by defendants.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies of the LASD, and their unconstitutional policies, practices, procedures, and customs were the moving forces behind the constitutional violations inflicted on plaintiff.

## ALLEGATIONS COMMON TO EACH COUNT

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. On May 23, 2022, at about 7:30 a.m., outside 12720 Norwalk Blvd., Norwalk, California 90650, plaintiff was attempting to enter the building and was in possession of his private, confidential, and attorney-client-privileged legal papers, when defendant **GUERRERO**, without a warrant, absent reasonable suspicion, absent probable cause, and without plaintiff's consent and over plaintiff's expressed objection, seized plaintiff's private, confidential, and attorney-client-privileged legal papers, refused to return it, and prevented plaintiff from providing those papers to his attorney, who was in need of those papers in order to represent plaintiff in court, immediately thereafter, and who was prevented from competently representing plaintiff in court because the papers were stolen by this defendant and not returned to plaintiff.

10. Defendant **VILLANUEVA** is legally liable for all of this conduct because, with deliberate indifference, he caused it, ratified it, condoned it, or otherwise made it possible, by their actions and/or inactions, and caused and/or created LASD policies, practices, procedures, and/or customs, that caused the

LASD officers' unconstitutional conduct, and because all of them failed in their duty to train police in proper, allowable, constitutional policing and jail procedures, and their failures amounted to deliberate indifference to the rights of persons with whom the police come into contact.

## COUNT ONE
(Against All Defendants, 42 U.S.C. § 1983)

11. Plaintiff realleges specifically the allegations set forth in averments 9 & 10, hereinabove, and, by virtue thereof, all defendants are liable to plaintiff, pursuant to 42 U.S.C. 1983, for violation of plaintiff's Fourth Amendment rights, not to be subjected to unreasonable searches, seizures, stops, arrests, and criminal prosecution.

12. **VILLANUEVA** is responsible for the Fourth Amendment violations committed by the deputy sheriff defendants because he set the policies and accepted the customs of the LASD, among which were unconstitutional, thuggery against citizens, and plaintiff herein was subjected to such thuggery.

13. Reserved.

## COUNT TWO
(Against All Defendants for Conspiracy Under § 1983)

14. Plaintiff realleges specifically hereat the allegations set forth at averments nine through 13, hereinabove, and by virtue thereof, all defendants also are liable to plaintiff for conspiracy to violate Fourth Amendment and Fourteenth Amendment rights, pursuant to § 1983, because they had an agreement and/or understanding that the wrongs perpetrated would be perpetrated, and then they were perpetrated, by the LASD defendants Fourth Amendment violations.

15. More specifically, **VILLANUEVA** for many years, hase been aware of and permit and condone police misconduct, so that LASD officers feel free to violate the Constitution's Fourth and Fourteenth Amendments, and here did so,

and this defendant failed to investigate and covered-up what occurred in this matter, notwithstanding that plaintiff filed a grievance concerning the incident.

16. Reserved.

### COUNT THREE
(Against All Defendants, Under Sec. 1983, *Monell*)

17. "[When] the complaint plausibly alleges a policy, custom, or practice leading to that violation[, s]ee *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)[,] [and] Plaintiffs' allegations amount to . . . more than an 'isolated or sporadic incident[ ]' that . . . forms the basis f *Monell* liability for an improper custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)." *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2001). Herein, all defendants are liable to all plaintiff because they had and have, and foster, policies, practices, procedures, and customs of Fourth and Fourteenth Amendment violations by members of LASD, which policies, *etc.*, in violation of the these Amendments, were the moving forces that caused the violation of the plaintiff's rights, as alleged herein, and, also the supervisor defendants are liable because they have a custom of improperly indemnifying, and of conspiring to indemnify, LASD officers for punitive damages assessed against those deputies by juries in civil rights cases, or settling those cases to avoid having to vote on whether or not to make such indemnifications, because that practice was a moving force that caused the violations of the plaintiff's rights as alleged herein.

18.-23. Reserved.

### COUNT FOUR
(Against All Defendants Under § 1983)

24. Defendants' conduct deprived plaintiff of his and interfered with plaintiff's federal constitutional right of access to the federal courts.

### COUNT FIVE
(Against All Defendants Under § 1983)

25. Defendants' conduct constituted an obstruction of justice.

## COUNT SIX
(Against All Defendants Under § 1983)

26. Defendants' conduct constituted a deprivation of plaintiff's right to counsel in a criminal proceeding.

## COUNT SEVEN
(Violation of *Jus Cogens* International Law)

27. Defendants' actions, as set forth hereinabove, are in clear violation of and are prohibited by the *jus cogens,* peremptory norms of international law that, among other things, prohibit unlawful takings into custody by government.

28. Such *jus cogens,* peremptory norms are the law of the land in the United States of America, and plaintiff and class members are entitled to damages for the harm caused to them by defendants' violations of *jus cogens*, peremptory norms, and to declaratory and injunctive relief, because the Ninth Circuit, in *Siderman v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), has held these prohibitions to be *jus cogens* norms. That is, plaintiff and class members claim defendants are liable to plaintiff and class members for subjecting them unlawful detentions, in violation of *jus cogens* peremptory norms of international law, whose violation, in turn, is a violation of the law of the United States of America, under the Supremacy Clause of the United States Constitution.

## COUNT EIGHT
(Violation of *Jus Dispositivum* International Law)

29. Defendants' actions, as set forth hereinabove, are in clear violation of the *jus dispositivum* treaty obligations entered into by the United States of America, and which obligations, pursuant to Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), are "the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding."

30. The specific treaties whose provisions prohibit unlawful detentions and cruel and unusual punishments, to which the United States of America is a

signatory, and whose provisions were violated by defendants, are: Universal Declaration of Human Rights, G.A. Res. 217 (A) (III), U.N. Doc. A/810 at 71 (1948); the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452 (1975); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, annex 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51, art. 1 (1984); Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, G.A. Res. 43/173, 43 U.N. GAOR Supp. (No. 49), U.N. Doc. A/43/49, at 297, Principle 5 (1988); the American Convention on Human Rights, O.A.S. Treaty Series No. 36, at 1, OEA/Ser. L./V/II.23 doc. Rev. 2, Art. 5); International Covenant on Civil and Political Rights, G.A. Res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, Art. 7; and, the European Convention for the Protection of Human Rights and Fundamental Freedoms, 213 U.N.T.S. 222, Art. 3, and by engaging in the conduct alleged, defendants violated those treaties and conventions, and thereby violated the laws of the United States of America, through the Supremacy Clause.

   31. By virtue of the violations of the provisions of these treaties, plaintiff and class members are entitled to recover nominal damages and punitive damages from defendants, and to declaratory and injunctive relief.

   32.-141. Reserved.

**COUNT NINE**
(Against All Defendants, RICO)

   142. By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, going back at least 40

years, with a threat of continued racketeering activity of obstruction of justice, and continue to commit obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute.

### Rico Predicate Acts

143. On May 23, 2022, defendant **GUERRERO** caused plaintiff's legal papers to be taken from him, and thus stole his personal property that property never was returned to plaintiff.

144. The LASD deputy's the theft of plaintiffs' property was pursuant to LASD custom and was condoned, approved of, and ratified by **VILLANUEVA**.

145. **Obstruction of Justice** The obstruction of justice occurred by defendants by inflicting constitutional violations on plaintiff and class members and by preventing plaintiff and class members from exercising their federal constitutional rights, all as set forth hereinabove.

146. Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the County of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises.

146a. All of the LASD defendants are a separate enterprise, like a true mafia, extortion/protection-type, racket-enterprise.

147. Each and all of defendants' activities affect interstate commerce, as well as intrastate and interstate travel.

148. Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the

enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

149. Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

150. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, fraudulent concealment, and obstruction of justice, and defendants' defense of the instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that those who may participate in the defense, such as defendant Kim, of this action may make themselves liable under RICO.

151. Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

152. The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 40 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

153. At least one thousand RICO predicate acts have occurred.

154. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by

9

their common characteristics and participants, they are not isolated events, but are both continuous and systemic, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

155. The activities led to defendants' control of and acquisition over the enterprises and resulted in the injuries to plaintiff and class members, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

156. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

157. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff and to class members, as alleged herein.

158. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

159. Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do, and having a meeting of the minds, and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, continued and continue to do so, with the aid and assistance of co-conspirators

160.-272. Reserved.

## CLASS ACTION ALLEGATIONS

273. Plaintiff is a member of a class, whose defining characteristics are that they are persons who were subjected to Fourth and Fourteenth Amendment violations at the hands of LASD officers, specifically the interference with, interception of, taking of, and theft of confidential, attorney-client privileged materials, as well as delaying its delivery from lawyers to their jailed clients.

274. The class contains over 1,000 people, and the class is so numerous so that joinder of all members is impracticable.

275. There are only common questions of fact and of law with respect to all class members of each class.

276. The claims made by the representative party of the class, plaintiff, are typical of the claims of each class member.

277. The representative of the class, plaintiff, more than fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both themselves and through their very zealous attorney.

278. Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes, and defendants have acted and will continue to act on grounds generally applicable to every class member in both classes, and the class questions not only predominate but are the only questions that exist, and this action is the far superior manner to other available methods for fairly and efficiently adjudicating the controversies.

279. Specifically, the class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the

amount of damages, identification of class members, and providing actual notice to virtually all class members.

280. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & 23(b)(1)(A),(B)(1), (2), and (3).

281. Although there would appear to be no notice requirement as to (B)(1) & (2) classes, the nature of the notice to be provided to class members would be decided by the court.

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. Compensatory damages $1,000,000, and trebling under RICO;

2. Punitive damages on all non-*Monell* claims, in sums to be determined by a jury, and as a percentage of the net worth of each defendant, in sums sufficient to deter future misconduct, and not less than $100,000,000 per defendant;

4. The costs of action and interest;

5. Attorneys' fees; and,

6. Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

### YAGMAN + REICHMANN, LLP

By: /s/ Stephen Yagman
**STEPHEN YAGMAN**